May it please the Court, my name is Charlotte Merrill and I represent the Petitioner-Appellant Clinton Spencer. I'll reserve three minutes for rebuttal. Defense counsel's theory at trial was that Mr. Spencer wasn't present when the murder occurred, yet he failed to present or investigate two crucial alibi witnesses who could have said just that. Despite this, the District Court improperly found trial counsel performed effectively. Mr. Spencer respectfully asked this Court, exercising de novo review, to reverse that decision. We'll discuss with the Court, first, why trial counsel's performance was deficient, and second, how those errors undermined confidence in the outcome. Defense counsel's theory at trial, which is evidenced in his stipulations, questioning, and closing argument, was that Mr. Spencer was with the victim at 1.07 a.m. in Mesa, Arizona, but did not murder the victim. The State's theory, on the other hand, was that Mr. Spencer murdered the victim more than 50 miles away, 50 minutes, excuse me, away in Buckeye, Arizona, between 2 and 3 a.m. However, counsel failed to investigate two alibi witnesses who would have placed Mr. Spencer half an hour away from Buckeye, Arizona, in downtown Phoenix, between 2 and 3 a.m. Well, as far as Bula is concerned, he did investigate. You're just saying he didn't investigate enough. No, Your Honor. There's their results. Wasn't the investigation, if you check into other people who have done investigation, he found out some information. What you're complaining about, as I understand, he didn't go far enough to find the witness. No, Your Honor. There is no evidence that he made an independent investigation. And under this court's law in Howard v. Clark, counsel has a duty to make an independent investigation. Well, if he isn't an investigation, if you talk to a knowledgeable, trusting investigator, whether you've hired him or not, and they tell him there's no such person, isn't that an investigation? Well, Your Honor, trial counsel did not do an independent investigation and only relied on what the State had done. Okay. But that is an investigation. But your – I don't see your argument that it wasn't an investigation. He checked on something. I think your argument is he shouldn't have checked far enough. He shouldn't have believed these people. He should have gone out and found Bula. Well, Your Honor, there are two points to that. The first is that when trial counsel was trying to get these statements in as a hearsay exception, he had at least three opportunities to say he'd done anything, tried to find her himself, and it was crucial for him to do that because he was trying to get those statements in as an exception to hearsay, and he didn't do that. And in fact, the State challenged him on that point and said there is no basis whatsoever to say you've made any effort to find Bina Bula. And he did not respond to that motion in writing. And then in arguing that in the motion in Liminey, he again doesn't give any basis for saying that he's done anything. So had he done something, he would have said so. Tell me about the investigator that the briefs tell me about that I read that say just the opposite. They said he checked with a county investigator, and they said it's a dead end. Well, Your Honor, the State tried to find her. But under the law. Well, that's right. But are you saying that if the State has done everything, and you trust the person who makes a good judgment call, that that doesn't count at all? Absolutely, Your Honor. That's correct. That's your position. So as you argued, he should have taken a countrywide investigation of this person. And then somebody else said that Bula is in the Philippines or Pakistan or India. So he should have gone to the Philippines, Pakistan, and India and made countrywide investigations. Not necessarily, Your Honor. But he has to be reasonable, doesn't he? He should have been reasonable, and he should have done more than simply rely on what the State had done. Why is that? Why is that? Under this Court's case Howard v. Clark in that 608F3rd563, counsels looked at the police reports and did the same thing, relied on that. And this Court specifically said to make an informed assessment, counsel is obligated to make an independent assessment and not rely on what the State has done. Counsel, does the record show whether Mr. Spencer's current counsel has made any efforts to locate these witnesses? Because this came to us in the context of an appeal, we and we were doing an Atkins investigation, we have found those witnesses. You found them? Yes. Is there any evidence that you put into the district court that's before us? No, Your Honor. That came after the district court, and unfortunately, Mr. Spencer was denied the opportunity to have an evidentiary hearing both in State court and in the district court. Did you make a proffer of evidence? They did not, Your Honor. But because he was denied those opportunities, he wasn't able to put that before the court, and that would be something that would be proper for an evidentiary hearing. So there's nothing in the record on this issue? Nothing on the finding in the record? There is – what's in the record is that – is the statement of Menabula to the police, which – So you're telling us that somebody has found her? Yes, Your Honor. Okay. And you're correct. That's not in the record. That's not in the record. Did you proffer that to the district court? No, Your Honor. Again, we took this case – So we don't know whether she would corroborate this. We don't know whether she was actually found in the Philippines or whether she was still in Phoenix. Correct, Your Honor. That's something that would be absolutely appropriate for an evidentiary hearing, because that opportunity for factual element – But you didn't present that. Did you have this evidence before – did somebody have this evidence when you were before the district court? Not that I know of, Your Honor. So it was found after appeal? Yes, Your Honor. When we took this case on appeal, we were able to discover that they used it. Okay. But you didn't – you haven't asked us to send it back on the basis that there's all kinds of new evidence that – And that would be – that's what we would ask the court to do. That's absolutely appropriate for an evidentiary hearing, because Mr. Spencer has been denied the opportunity for factual element. Has the motion been made? I'm just wondering why we're hearing about this for the first time and we have to hear about it in response to my questions rather than on your initiative. Your Honor, I – what I would like to bring up to the Court is the evidence that's already in the record that we know what they would say and that as far as James Wright is willing to testify. Well, we don't know what they would say. We know what they – we know what a police investigator wrote down in a very, very cryptic note. We also know that that – that some of the facts that he wrote down don't match up with the evidence. And it looks like these witnesses may well have been incredible. And so if there were further evidence today that we had found these witnesses, that these witnesses had a clear recollection, or they don't have any recollection, or they deny that they've ever – that they ever said any of those things, all of that might be – might be useful to us. But we have nothing from you on that, and so now I'm not sure what to do with this. Absolutely, Your Honor. And that – that's what makes remanding for an evidentiary hearing appropriate. But don't we have to have a basis to remand? Yes, Your Honor. And the basis for that is, again, the statements in the police report and James Wright letter. There is some basis On this record, what is that? Would that – would that have rebutted anything in the record that led to conviction? Absolutely, Your Honor. It would have changed the evidentiary posture of this case. It might have just changed the time of the killing. It might not have – that's all, because this – this – on this record, this person was dead before she was set afire. Somebody saw her burning, and times were given for various things. So if we had the witnesses that you suggest, what they might do is change the time, but they wouldn't change the fact of what happened, could they, on this record? Well, Your Honor, the timing is very important here, because you're absolutely correct. They were together at 107 a.m. They were – the victim's body was found at 3 a.m. That was 50 minutes away. It had to have been between 2 and 3. Counsel, the evidence for your client's guilt is – is somewhat circumstantial, but for a circumstantial case, it's pretty overwhelming. Your Honor, to use this Court's words, in other cases in which it's found prejudice, it's strong, but it's not ironclad. And to go – to go through two specific points of that – of that evidence, one is the blood evidence in the car, which the State's witnesses said would have matched 50 percent of the African American population and could have been anyone's – Right. But we have him on camera. We have him on camera with the – with the victim at the ATM. We have him trying to sell her car in the morning after she's dead. We have her police officer. She pulled out all her money in the ATM. Absolutely. Handed it to him. And handed it to him. And what's so important about that is that the crucial time that's missing is 2 to 3 a.m. And had counsel investigated – This guy's either guilty or he's the unluckiest man in Arizona. But there's almost no in-between, is there? Your Honor, what's important here is that in Brown v. Myers, for example, the Court said he still may not have been acquitted, but what's important is that confidence in the case is undermined. And this Court has found prejudice in which the case is – the State's case has been strong. For example, in Brown v. Myers, the State had three eyewitnesses who identified her. What was the – I mean, is there any – did we get the affidavits from the lawyers here? No, Your Honor. And again, that would be something that's appropriate for an evidentiary. Okay. But nobody's gone to them and gotten something where he's come forward and said, yeah, I screwed up. I should have. That's correct, Your Honor. See, there's nothing we have before us in the record that says that this person has not been found or what this person would say. There's been no motion for us to remand the case to the district court with all of that data in it, affidavits or whatever. I don't see how we can do it. I don't see how the allegation which I accept, that you found Buehler, is going to help us any unless we have a motion to remand to the district court with sufficient affidavits that we would say, yes, it should go back and let the district court have an evidentiary hearing. Court, Your Honor, because he was denied the opportunity of an evidentiary hearing, again, in State court and district court, it hasn't been fully factually What would have been the purpose of the evidentiary hearing? The evidentiary hearing, Your Honor, we would put on trial counsel and both of these witnesses and sort out the facts that haven't been developed here. Again, because What facts are there? The things that we're discussing when trial counsel learned about James Wright and exactly what they would say. The critical question was whether Mr. — whether it was established beyond a reasonable doubt that Mr. Spencer was guilty of the crime. And there's evidence in the record that — overwhelming evidence in the record that shows that he was. Well, Your Honor So you — you — you — the best you could do was show that somebody made a mistake on what time it happened. It didn't happen at X hour. It must have happened at another hour because X, Y, Z. Isn't that the best you can get? Well, Your Honor, it must have happened between 2 and 3 a.m., and that is the time that these witnesses account for. And the crucial question, again, under Brown v. Myers, is the evidentiary They'd have to testify and they'd have to be believed in spite of evidence to the contrary, wouldn't they? Yes, Your Honor. And — and credibility is something — those sort of questions are what the jury can sort out. That doesn't excuse counsel from not investigating and does not mean that had those witnesses been before the jury, the evidence would have been more evenly balanced, and that is where the prejudice lies. Well, the prejudice lies only in the sense that if we knew that Beulah was found, which we don't know in the record, and that we know what she would testify to by an affidavit, without that, we don't have anything to — to remand her, do we? Well, Your Honor, we know from the record, and Rule 32.5 allows other evidence, that she would have said he was checking into the hotel at 2 a.m. And — and, again, that — that is an alibi for him that he should have been independently investigated. He said that. I'm sorry? The defendant said that. Both the State and the defense in their motions rely on her — Menahbula's initial statement to police, which is that he checked in at 2 a.m. So there is evidence in the record of what she would say. The only evidence of what she would say would be the police officer's sketchy report. That's right, Your Honor. Which didn't match up with other facts, other known facts. Your Honor, the — the things that are pointed out in the original hearsay findings that don't match up are minor details such as clothing. There would have been something that counsel could have easily investigated and presented had he done what he should have done here. And the result of those — You mean find Bula? Yes. Investigate Bula and ask her questions. And had he done so, the evidentiary balance would have been different. Are you — are you representing to us that — that Bula exists and Bula has been talked to and then she's competent to sign an affidavit? She exists, Your Honor. That's what I know at this point. That's all we know. She may be in — in the Philippines or she may be in — in Pakistan or in India or — From our investigation, Your Honor, she's in Mississippi. Pardon? She's in Mississippi from our investigation. Again, that's — that's not something that's in the record. With the Court's permission, I see I have very little time. If you have — I'm going to — I'm going to give you some additional time. We've chewed up a lot of your time here, so I'm going to allow you some additional time. Thank you. We found out something new. Yes. Mr. Klingerman? May it please the Court, Nicholas Klingerman from the State of Arizona, representing Respondents. I guess I start by noting that this is the first time I found out — heard that Nina Bula herself has been found, so I don't know entirely how to respond to any of those — those claims, but I do want to make a note about a remand for an evidentiary hearing because the district court found that counsel, PCR counsel, was not diligent in presenting his claims to the state court. So I think here that brings us under E-2 to — to be even entitled to a new remand at this point. We would have to show — So he — there's a finding that he was not diligent? The district court did make a finding that he was not diligent in presenting his claims to state court. Who was not diligent? That he — Spencer's post-conviction relief calendar. Oh, I thought you meant the one who's being challenged on — in this case for being inadequate. Well, even at the — even at a minimum, Judge, I believe that — that to even be entitled to a new hearing at this point, Mr. Spencer would have to establish by clear and convincing evidence that no reasonable fact finder would have found him not guilty based on this new evidence. And I just don't think that — I think you meant no reasonable fact finder would have found him guilty, didn't you? No reasonable fact finder would have found him guilty, correct. And I just don't think on this evidence, even with that testimony that he was checking into the hotel room at 2 a.m., it would have changed the outcome in this case at all. And I think really — and that goes to the prejudice analysis here. And I think there's really three areas to discuss. And first is the overwhelming evidence of guilt. And I think it's well settled that this Court analyzes prejudice in an ineffective assistance claim in light of the strength of the government's case. And I think certainly the evidence was overwhelming. The Arizona Supreme Court essentially made that finding at ER 8 through 9 when it stated, the most reasonable inference is that after emptying her bank account, Spencer drove the vehicle, raped her, stabbed her, set her on fire, and drove off in her car. The evidence is more than sufficient to support the verdicts. And again, under 2254e1, I think those factual findings are entitled to deference. And then — and then even the district court at ER 60 stated, the case presented against Petitioner at trial, though circumstantial, was powerful and overwhelming. In fact, Appellant essentially described this crime to his co-workers a number of months before it occurred, and that's in the State's Second Supplemental Excerpt that I recently filed at page 60 through 73. And based on that finding, the Arizona Supreme Court at ER 11 stated, the method in which the killing was accomplished was planned for months before. Moreover, the number of cases cited by Appellant, I think he's overemphasizing the strength of the government's case. Take, for example, this Court's decision in Sanders v. Rattell. You stated that you were confronted with a rare case in which a petitioner has demonstrated substantial possibility of actual innocence. Harris v. Reed, the Seventh Circuit case cited by Appellant, noted that only one witness linked the defendant to the murder, and that witness's testimony was critically different from his pretrial statements. In Anderson v. Johnson, the Fifth Circuit case, the Court noted that it was a — the State's case was weak. And in Williams v. Washington, the Court found prejudice after stating that a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. I think, rather, if you look at Sayree v. Anderson, State's answering brief at 32, is more analogous to this case, where when you did have overwhelming evidence of guilt, the Court said nothing that the defendant's testimony could have changed the outcome of the verdict. But I do want to talk about the actual credibility of the alibi witnesses, and I'm assuming Nina Buller would testify exactly that Spencer checked into the hotel room at 2 a.m. And I don't — I still don't think neither would have been very credible. And I think this is particularly true, just given the facts of this case, the video evidence showing Spencer with the victim, the fact that there's — her car tires, it's not an exact match, but it's likely that it was her car at the scene of the crime and then he sells her car the next morning. But I also want to talk about his statements, because the — Kennedy, and maybe the amount that he sold the car for would be significant. Goldstein, $180? Yes. Goldstein, yeah. And then — and then asked the police the following day for $300 in cash so he could leave town for a couple days, and also asked for a handgun. But I think his own statements right after the crime undermine his alibi witnesses, and his first statement to the police, ER 199-200, he claimed, I think this is important, that he was in his hotel room from Friday evening until Sunday when he was arrested and that he was alone all weekend. So, for one, there's no mention of checking into a hotel room at 2 a.m. on Saturday morning, and, two, there's no mention of James Wright in that story whatsoever. His second statement is ER 204-212, he admits that he was with the victim when she left the nightclub about midnight, but here he blames the crime on a man named Rudy, who we now know is the undercover police officer that he sold the car to. And then he says that when he came out of the convenience store that he went to with the victim, Rudy had — had essentially kidnapped the victim and told him to steal the car. Again, under this testimony, it's unclear whether he could have even checked into the hotel room at 2 a.m., but, again, there's no mention of James Wright. And his third statement was actually to a news reporter — that's in the State's second supplemental excerpts, 48 through 58 — where he claimed that him and the victim were secret lovers, that after going to a nightclub, they went to a convenience store, and that they were kidnapped by — that she was kidnapped by men with AK-47s, and they told him they needed to sell the victim's car and they'd be watching him if he didn't. Again, we know under this factual scenario whether he could have checked into the hotel room at 2 a.m. It's entirely impossible that he could have. And, again, no mention of James Wright in this story as well. Now, there's also two findings of Pat specifically related to Bullitt's testimony that I think is important for — by the Supreme Court that would also be entitled to deference, and that's that she would not have had access to a clock at 2 a.m. when the parents supposedly checked into the hotel room. And the second finding is that the description Spencer given by Bullitt did not match other witnesses. Do we have any details that he wouldn't have used a credit card, he paid cash, no receipts? Your Honor, the only receipt that's in the evidence is the little checking card that he received. There's no time on that, and there's no evidence — He did check into this motel — it was a Motel 6, wasn't it? It was a Motel 6, yes. He did check into a Motel 6 at some point. At some point during the weekend, the timing is unclear. The date on his check-in receipt is unclear. It looks like it was scribbled out. It could be read to mean, I believe, the 19th or the 29th. And then there's also a reference to May 20th in another corner. But there's no time specifically stated on that receipt. But even as to the check-in time itself, if Mina Bullitt was to claim now, as defense counsel suggesting in an opening brief at page 22, that she could have had a personal watch, well, that would be impeached by what she told to the detective. At ER 88, trial counsel for Spencer relates what the detective said, and that's that Mina Bullitt told him she looked at the clock on the wall in the lobby to determine the time. So now if she's going to claim she had a watch, her testimony would just be further undermined, and it would be impeached. The second point is appellant's clothing. And to attack the finding that, well, maybe Mina Bullitt's testimony could be accurate that he had on gray, he cites the opening brief at pages 22 to 23 to suggest that the other witnesses could have been correct. But I don't think his representation in the trial record is accurate on this point. He says only one witness identified Spencer's clothing, but that's not accurate. The nightclub doorman, James Huffman, in SSER 23 through 25, said that appellant was wearing a multicolored, long-sleeved, not short-sleeved shirt and green pants, not blue jeans or jeans, as Mina Bullitt suggested. And again, most importantly, state supplemental experts at 45, appellant himself said when he was at the nightclub with the victim doing his statement to the police that he was wearing a green multicolored shirt with flowers on it, I believe. So again, if Mina Bullitt is going to testify or claims that he was wearing a gray shirt, it's directly undermined by Spencer's own statements himself. And I think, moreover, there's absolutely no contention at trial that Spencer was not the person in the ATM photographs that had on a patterned shirt. In fact, he even stipulated to that fact, and you can find that, that's at ER 142 through 43. So I don't necessarily think even assuming Mina Bullitt would testify, as she's already made statements to the investigator, it would not change the outcome of the evidence in this case whatsoever. As far as James Wright, we know that he has prior felonies. It's not on the record, so I don't want to discuss how many he has. But he would be impeached right away. Nor is it unclear that it's factually impossible for an appellant to have committed the crime and went to a convenience store with James Wright at 2.30 a.m. And lastly, I think even as a policy decision that called James Wright or as a decision by counsel, it's probably questionable. In a sexual assault that leaned over the whole case, in which the Arizona Supreme Court commented on, the call of witness who would testify that him and the defendant were partying with street hookers the night before the crime occurred seems hardly beneficial. I did have a plan on making an argument, and at least on the record today, appellant still has not presented any evidence that trial Mina Bullough would have testified. And I think from what has been asserted, it's still not clear that she would actually testify or provide an affidavit. Now, certainly as far as James Wright, he did write a letter. But appellant himself, who did provide an affidavit with his habeas petition, makes no mention of ever informing trial counsel of James Wright. There's absolutely no evidence in the record beyond his unsupported conclusion in his post-conviction relief brief that James Wright was discoverable. As for counsel's performance, I want to clarify a couple positions. In the appellant's opening brief at page 17, he states, the facts are undisputed by the state that trial counsel made no effort to locate the witnesses which would have provided an alibi for his capital client. And we disagree that we would dispute that conclusion. The district court at ER 59 stated that Spencer has provided no evidence to support his assertion that counsel took no steps to find these witnesses. And in pages 26 through 27 of the state's answering brief, we essentially agree with that conclusion. Another point of fact that I want to clarify is in his opening brief at page 9, appellant contends that Mary Durant, defense counsel investigator, made no attempt to locate witnesses until May of 1999. But at ER 323, she specifically states, I did some witness location for the defense in the month of February. So she doesn't say what witnesses she searched for, but it's entirely possible that she may have taken steps to find these two alibi witnesses as well. The third point I want to mention is that at least as to the law, an appellant seems to claim that there's a per se rule that failure to investigate witnesses is ineffective assistance of counsel. But that's what the Supreme Court in Pinholster expressly suggested, that in ineffective claims, per se rules are inappropriate. Moreover, this Court in Riley noted that counsel has to make some investigation or at least disclose a reason that made that investigation unnecessary. Likewise, you could find in Bryant v. Scott, they said counsel has to at least try. And in Williams, the Seventh Circuit said they expect counsel to do something. As far as relying on the state's witnesses, again, I just point to Strickland at 691 to say that counsel has to make a reasonable decision that makes a particular investigation unnecessary. If the state's investigator is already informing trial counsel that she did a very thorough search for this witness, checked driver's license, social security, immigration, naturalization services records, then it would seem certainly reasonable for trial counsel to not repeat the same already futile steps that the state's investigator performed. As for my last point in terms of James Wright, again, I don't necessarily know if anyone's ever discovered, if it was even PCR counsel that necessarily discovered him. And if you read his letter, it states, hi, my name is James Arthur Wright, 80586. You don't know me.  I think that given the wording suggested, it's entirely possible that this letter could have been unsolicited as well. I guess with my last 30 seconds, I do want to attempt now to preserve, especially in light of Pinholster and Richter, that this case should be decided under D1. I know in our opening brief we didn't. But we have since made arguments, and we, in James, in the James decision, we have issued a writ with the Supreme Court arguing that similar sort of brief ordered by the trial court was also a merits ruling.   Thank you, counsel. Your Honors, to address the Pinholster-Richter issue just very briefly, 2254d does not apply. The PCR court made, state courts made no rulings on the merits. And as the district court properly found, there's no merits ruling to apply to the  And so I'm going to defer to Justice Breyer. court difference under 2254. So Pinholster is completely inapplicable. The second point I'd like to address that the state addressed is diligence to go back for an evidentiary hearing. Under the U.S. Supreme Court case Williams v. Taylor, counsel must at least ask for an evidentiary hearing. He did that both in state court and district court at ER 243 and ER 305 and was denied both times. So the last two points that I'd like to address is although the state cites cases that in which the court didn't find prejudice finding that the state's case was weak, the court should also compare this to those in which the court found prejudice when the state's case was strong. And three of those from this circuit include Sanders v. Ruttell in which there were five eyewitnesses, Brown v. Myers in which there were three eyewitnesses and Lord versus Wood in which there was hair and blood evidence and alleged confession to a cellmate. Did you find anyone where there was videotape? No, Your Honor, but what the videotape does here is simply explain what we already know, that he was with her at 1 of 7 a.m. It doesn't explain the crucial time that those alibi witnesses would have explained. Doesn't the video show her withdrawing money? Yes, Your Honor, it does. And giving it to him? Yes, Your Honor, it does. So when you say it only shows that they were together at 1 of 5, you don't misstate, but you understate a little. Well, Your Honor, the important thing here is they're together, yes. He took out the money, yes. And there are also cases where there is... She took out the money. Excuse me. She took out the money. And there are these cases where there's other strong evidence. But what's important when it comes to prejudice is that had these witnesses been... How about his having possession of her car? Yes, and we acknowledge those facts, Your Honor. What's important is that... How about him selling it? Again, he sold the car. You're correct. For $180. What kind of car was it? Your Honor, it was a Honda, and that brings me to once... What year model? Excuse me? What year model? 1980s, Your Honor. And what's really the crucial thing about that... It's a model Honda, and he sold it for $180. Yes, Your Honor. And that and the statements that he made that the state brought up are inconsistent must be considered in the fact that this was an Atkins claim. We have proven to the state court that Clinton has... Clinton Spencer has an intellectual... I don't know what to argue. The record is here, and we've got some idea of what's in the record. You must accept that. Yes, Your Honor. And that is... And what would these witnesses have rebutted of what is in the record that led to this conviction? That he was somewhere other than at the scene of the crime, between 2 and 3 a.m., and that's what's prejudicial. And that's all, isn't it? Yes, Your Honor. All right. I think we understand the argument, counsel. Thank you very much. We thank both counsel for the argument today.
judges: Wallace, Farris, Bybee